IN THE DISTRICT COURT
FOR THE TERRITORY OF GUAM

| | |
|---|---|
| NAVAL GOVERNMENT OF GUAM,<br><br>Plaintiff,<br><br>vs.<br><br>150,831 SQUARE METERS OF LAND, MORE OR LESS, IN THE MUNICIPALITIES OF AGAT, BARRIGADA, AND DEDEDO, ISLAND OF GUAM, MARIANAS ISLANDS, *et al.*,<br><br>Defendants. | Case No.: 50-CV-00036<br><br>**ORDER**<br>DENYING OBJECTIONS TO REPORT AND RECOMMENDATION, ADOPTING IN PART THE REPORT AND RECOMMMENDATION, AND DECIDING REQUEST RE WHICH MAP SHOULD BE USED |

## I. INTRODUCTION

Before the Court is Jesus S.N. Quintanilla's request for the Court to determine which map should be used to show what land was condemned and which individuals were therefore entitled to compensation in Civil Case No. 36-50.[1] (ECF No. 115.) Mr. Quintanilla requests that the Court determine whether Map 10107 A filed in Civil Case No. 13-58, or Map 10107 B filed in Civil Case No. 36-50 was used or should have been used to determine which lots were taken in Civil Case No. 36-50.

Also before the Court are the Magistrate Judge's Report and Recommendation (ECF No. 118) on Mr. Quintanilla's request, and Mr. Quintanilla's objections. (ECF No. 119.)

---

[1] The Court's case numbers previously had the year as the second number. They have subsequently been reformatted to have the year as the first number.

1

## II.     BACKGROUND

On April 17, 2015, Mr. Quintanilla filed a request for a determination of which map, 10107 A or 10107 B, should be used by the Department of Land Management and Ancestral Lands Commission in deciding his Ancestral Land Claim on Lot 5235, which he alleges was condemned by the Government in Civil Case No. 36-50. (ECF No. 115.) He attempted to enter Map 10107 B as part of the record for his claim, but the Ancestral Lands Commission rejected it because it was a draft map and not a final map. (Request 1, ECF No. 115; ALC Response to Mr. Quintanilla 1, ECF No. 115-1.)

To support his request for a determination, Mr. Quintanilla has submitted seventeen (17) exhibits, including the court documents from the 1950 condemnation action; his correspondence with the Ancestral Lands Commission and Government of Guam; the recorded owners of various lots, including Lot 5235; diagrams or maps of various parcels; and the two disputed maps. (*See* ECF No. 115-1 to 115-18.)

The record shows that Map 10107 B was used in the 1950 action Civil Case No. 36-50, in which the Government condemned a number of lots, including parts of the lots inside Parcel 3, known as the AV-Gas Tank Farm. (*See* ECF Nos. 115-3, 115-11.) This map, which was referred to as Drawing No. 10107 and attached to the Governor's Declaration of Taking as Exhibit B, shows the AV-Gas Tank Farm (Parcel 3) extending into Lot No. 5235. (*See* Ex. B to Decl. of Taking, 115-11 at 8; Map 10107 B, ECF No. 115-15 at 1.) A small portion of the southern part of Parcel 3 is showing within Lot 5235.

On the other hand, Map 10107 A as identified by Mr. Quintanilla is part of the file for the 1958 action Civil Case No. 13-58, a separate condemnation case involving parcels of land near the land

condemned in Civil Case No. 36-50, and was listed as Exhibit A in the Declaration of Taking. (*See, e.g.*, Civil Case No. 13-58, Ex. 115-2 at 2 (referring to map), 8 (listing condemned properties)). This map shows the same areas and lots as Map 10107 B, but shows that the AV-Gas Tank Farm does not extend into Lot No. 5235. (*See* Map 10107 "A", ECF No. 115-15 at 2.)

The Magistrate Judge reviewed the materials and issued a Report and Recommendation ("R&R") on Mr. Quintanilla's request. (ECF No. 118.) In the R&R, the recommended findings are that Maps 10107 A and B were both used in the 1950 proceedings; that Map 10107 B was a draft version to identify the property owners who would be affected by the condemnation; and that Map 10107 A was a revised version of Map 10107 B, and this revised version was ultimately used to determine the boundaries of the property taken and owners entitled to compensation. (*See generally id.*)

Mr. Quintanilla filed objections, arguing that the 37 attached exhibits demonstrate that Lot 5235 was part of the condemned property in Civil Case No. 36-50. (ECF No. 119.)

### III. LEGAL STANDARD

When a party objects to a magistrate judge's report and recommendation, the district court judge 'shall make a *de novo* determination of those portions of the [report and recommendation] to which objection is made." 28 U.S.C. § 636(b)(1). The district judge "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate." *Id.* She need not review any parts that are not objected to. *United States v. Reyna–Tapia*, 328 F.3d 1114, 1121 (9th Cir.2003) (en banc), *cert. denied*, 540 U.S. 900 (2003).

3

## IV. DISCUSSION

The Court has reviewed the record and agrees in part with the conclusions of the Magistrate Judge's R&R.

Map 10107 B was considered in Civil Case No. 36-50 but Map 10107 A was not. These maps are attached to the end of this Order for reference. The record demonstrates that Map 10107 B was a draft created to begin the process of determining the boundaries of, in relevant part, Parcel 3 (known as the AV-Gas Tank Farm). Map 10107 A is a revised, final version of Map 10107 B and was used in the subsequent Civil Case No. 13-58, but was not used in the earlier Civil Case No. 36-50 as evidenced by the fact that the last revisions post-date the 1950 declaration of a taking. (*See* Map 10107 A, ECF No. 115-15 at 2.) However, Map 10107 A accurately reflects the metes and bounds of the condemned property in Civil Case No. 36-50.

This conclusion is borne out by the documents submitted by Mr. Quintanilla. For example, in the June 30, 1950 Declaration of a Taking by Guam Governor Carlton Skinner, the Governor refers to "Marianas Area Drawing No. 10107" titled "Real Estate Requirements, AV-Gas Fuel System, H.A.F.B. to N.A.S., Agana." (ECF Nos. 115-3, 115-11.)[2] A comparison of that document to the maps identified by Mr. Quintanilla as 10107 A and 10107 B show that the declaration was referring to Map 10107 B. The titles of the maps are the same and the markings on the map are the same. This demonstrates that Map 10107 B was used in Civil Case No. 36-50.

---

[2] The Declaration of Taking is the same in ECF Nos. 115-3 and 115-11, but the maps are attached only to ECF No. 115-11.

4

That said, Map 10107 B is not a final map and was not used to create the finalized list of property owners entitled to condemnation. As can be seen on the map, Lot No. 5212 is crossed out and Lot No. 5242 is written above it. The court determination of the properties condemned includes Lots No. 5242, but not Lot No. 5212. (Decl. of Taking, ECF No. 115-5.) In other words, while Map 10107 B was used in Civil Case No. 36-50, as Mr. Quintanilla contends, it was not accurate. Instead, the metes and bounds as described in the Governor's Declaration of Taking were relied on and Map 10107 B was not.

These metes and bounds are accurately reflected in Map 10107 A, which shows that Lot No. 5235 was not condemned. That Map 10107 A correctly shows the condemned lots is confirmed by several obvious revisions and a careful review of the documents. For example, as discussed above, Lot 5212 was erroneously listed on Map 10107 B and was corrected to be Lot 5242. This revision also appears on Map 10107 A. (Map 10107 A, ECF No. 115-15 at 2.) Moreover, a review of the metes and bounds and comparison to Map 10107 A's positioning of Parcel 3—it is moved northward from where it was placed on Map 10107 B—shows that it is accurate and conclusively demonstrates that Lot No. 5235 was not condemned.

In sum, Map 10107 B was used in Civil Case No. 36-50 as a draft. However, the metes and bounds, which never changed during the condemnation process, are not accurately reflected in Map 10107 B, which is why it was not ultimately relied on to determine the owners entitled to compensation. Map 10107 A was not used in Civil Case No. 36-50, but accurately depicts the metes and bounds at issue there. Thus, it is not erroneous for the DLM and ALC to rely on Map 10107 A to visualize the metes and bounds set out in Civil Case No. 36-50 and to reject recording Map 10107 B.

Accordingly, the Magistrate Judge's R&R is adopted in part as to the conclusion that Map 10107 B is a draft, but not adopted in part as to the conclusion that Map 10107 A was filed as or used to determine which lots were taken as part of Civil Case No. 36-50.

Finally, Mr. Quintanilla's objection and 37 exhibits do not demonstrate that Map 10107 B was the final map used in Civil Case No. 36-50 to determine who was entitled to compensation. In presenting additional maps to the Court, Mr. Quintanilla appears to be arguing that the final determinations were erroneous as demonstrated by Map 10107 B. However, what he has asked this Court to decide is which map was used in Civil Case No. 36-50, and therefore which map the DLM and ALC should be required to record in its consideration of that case. Accordingly, his objections to the conclusions of the R&R are denied.

## V.    CONCLUSION

For the reasons set forth above, the Report and Recommendation (ECF No. 118) is ADOPTED IN PART. Mr. Quintanilla's objections (ECF No. 119) are DENIED.

The Court finds that Map 10107 B was a draft used during the condemnation proceedings in Civil Case No. 36-50. However, it was not used to finalize who was entitled to compensation and because it is a draft, the DLM and ALC are not required to record it. Map 10107 A was not used as part of Civil Case No. 36-50, but accurately reflects the metes and bounds set forth in that case. It is therefore not erroneous for the DLM and ALC to rely on Map 10107 A because it correctly outlines the properties taken in Civil Case No. 36-50.

To the extent that the objections also apply to the determination of who was entitled to compensation, the Court finds the Recommendations of the Magistrate Judge to be supported by the

record and adopts all of the recommended findings except for number 7. Although this Court agrees that Map 10107 A reflects the determinations of the properties and owners of those properties taken for the use of the AV-Gas Tank Farm or Parcel 3, it was not in its completed form at the time the determination was made.

                **SO ORDERED** on February 22, 2018.

                /s/ Ramona V. Manglona
                RAMONA V. MANGLONA, Designated Judge



